1593154MO8\dmn\090524\man\090524\090624\dmn\090524\dmn\090624\091024

IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | BANKRUPTCY NO. 21-21712-CMB |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| CHARLES A. KNOLL, Jr., | : | |
| | : | |
| Creditor. | : | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### CREDITOR'S RESPONSE TO MOTION TO EXTEND DEADLINES AND MOTION TO REQUIRE ADDITIONAL DEBTOR DISCLOSURES FOR HEARING SCHEDULED SEPTEMBER, 30 2024

AND NOW, comes Creditor, Charles A. Knoll by and through his counsel, David M. Nernberg and Nernberg & Associates, and files this Response to Motion to Extend Deadlines and Motion to Require Additional Debtor Disclosures for Hearing Scheduled September 30, 2024.

### INTRODUCTION:

1. On August 2, 2024 Debtor, Eustace Uku, filed a motion to convert this three-year-old Chapter 13 case to a Chapter 11 case.

2. The reasoning provided by Uku was that he required more time for a feasible plan to pay off creditors.

3. Creditor Charles Knoll objected to the conversion and requested this Court dismiss the bankruptcy with prejudice.

1

4. The Court scheduled an evidentiary hearing as to why this Bankruptcy should not be dismissed or otherwise converted.

5. The Court required certain financial disclosures prior to the hearing.

6. Pursuant to Uku's motion, the disclosures and arguments were extended to September 20, 2024.

7. While the parties discussed settlement, disclosures to the court and during those discussions raised major concerns for Knoll.

## BACKGROUND:

8. Knoll is the major creditor and stands to lose the most because of these proceedings.

9. In addition to these proceedings, Knoll has an ongoing adversary action to declare the debt non-dischargeable and Uku has an adversary action to reduce Knoll's lien on the only valuable asset of the Bankrupt Estate, his house located at 214 Farmington Road.

10. Uku initially declared the value of house as $300,000 in his original petition filed July 29, 2021 ("coincidentally" roughly equivalent to the mortgage balance plus Uku's exemption at the time).

11. Uku subsequently obtained an appraisal in October of 2021 for $390,000 and never updated his plan to pay any of Knoll's judgment.

12. Knoll obtained an appraisal of Farmington as of June of 2023, for $470,000 but believes it is worth much more based upon his and his counsel's review of similar properties more recently sold in the past two years on the same street as Uku's house.[1]

---

[1] We will not digress into whether an appraisal should even be allowed as evidence without some objective proof that there is a meaningful correlation between appraisals and actual sales. Studies have shown otherwise. A realtor contacted by Knoll's counsel suggested a listing price close to $600,000.

2

13. Knoll is so certain that at $390,000, the house is so undervalued that he will offer $390,000 (subject to/with credit for Knoll's Lien) for the house with only the following conditions: (1) an inspection to assure that Uku is reasonably maintaining it, (2) at closing Uku leaves the house and delivers it broom clean and in the same condition as during the inspection and, (3) the title is marketable and insurable at regular rates. The offer will not be contingent on inspection and Knoll will pay one-half of the transfer taxes and close within thirty days.

14. Uku's sole purpose in filing the bankruptcy is to frustrate Knoll's judgment.

15. As this Court is aware, the state trial court found that Uku fraudulently converted joint assets to his own purposes, making an award to Uku which was reduced to judgment.

16. Following judgment, Uku concealed financial assets for which the trial court assessed attorney fees against him. And, Uku was found to have fraudulently transferred the very properties that make up the bankrupt Estate and, but for Knoll's actions, would not be part of the Estate. The state court voided the transfers.

17. In concealing his assets, when deposed, Uku refused to provide any detailed sources of financial information; instead he alleged his sole source of income were gifts from family and friends. He never provided detailed information, but further discovery located undisclosed bank accounts. Thus, Knoll is reasonably insistent on verifying anything Uku says.

18. With the foregoing backdrop, Bankruptcy is just another step on the way for Uku to avoid paying Knoll the judgment fairly won in a court of law. Instead, Uku and his counsel are using the Bankruptcy as a form of extortion: if Knoll will permit Uku to receive a priority payment exceeding his legal exemption and Uku's counsel to be paid an unreasonable fee, Uku will agree to a Chapter 11 conversion to sell the house.

19. Uku's demand for a payoff is an abuse of the Bankruptcy and, given that he is willing to sell the house if he gets a "bonus", there is no justification for not selling the house to pay legitimate creditors such as Knoll. That can be accomplished by a dismissal of the bankruptcy leaving Knoll in a position to execute on his judgment.[2]

## **NEW INFORMATION AND RELIEF SOUGHT:**

20. Uku's counsel, Mr. Calaiaro represented to this Court and to the undersigned, that Uku was working as a lawyer or is otherwise employed and generating income.

21. Mr. Calaiaro informed the undersigned that Uku has been and will be in a rehabilitation facility for some time. That raises the question of how Uku could generate any income and the source of funds utilized to pay the plan during this Bankruptcy and as has been proposed in Uku's Motion to Convert?

22. Further, Mr. Calaiaro informed the undersigned that Uku would be unable to testify at the evidentiary hearing scheduled by this Court and, that Uku would make a "declaration" instead.

23. Knoll believes that Uku never practiced law prior to his bankruptcy, although licensed since 1982 (the two cases located by a search with Uku's name as counsel seemed to involve Uku as counsel for his own company and were dated years ago).

24. The Pennsylvania Disciplinary Board website reports Uku maintains legal malpractice insurance. It also reports that he practices with a law firm, Uku and Uku, but the Board identifies only this Uku as being a licensed attorney in Pennsylvania. Thus, there can be no other partner in the firm named Uku and Uku (Uku's ex-wife, Shelly Fant is listed as a

---

[2] F.R.E. 408 is inapplicable to prevent this statement as the Advisory Committee Notes point out: "Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule." Knoll's offer here is not to prove his claim but to prove the bankruptcy is being used in bad faith.

4

member of the firm, but her license was suspended for a three-year term early in 2024 for a tax fraud and DUI conviction). Thus, the subject of Uku's income is mysterious. Let alone his alleged employment.

25. This Court should not allow Uku to testify or present any declaration without Knoll having the opportunity to verify the information he presents. Knoll requests this Court to permit limited discovery into Uku's income, business and assets or otherwise and require complete disclosures. Further, Knoll should be entitled to examine Uku should he offer any declaration or testimony.

26. Knoll believes it is likely Uku is using his purported employment to launder concealed funds to himself.

27. To that end, Knoll requests (1) a copy of the current legal malpractice insurance policy Uku informed the Pa. Disciplinary Board he has (the Board does not verify the attorney representation), (2) federal and state tax returns since filing in this Court in 2021, (3) original books and records disclosing income and expenses (client names may be redacted for legal services only) in his legal business and any other business in which he engages from 2021 to present, (4) form 1099s issued to Uku and the record of 1099s issued by Uku from 2021 to present, (5), evidence of the source of the funds utilized to pay the Bankruptcy Plan from 2021 to the present and (6) any other source of income Uku alleges and documents evidencing such income from 2021 through the present.

WHEREFORE, Charles Knoll requests that this Honorable Court enter an Order consistent with the relief requested in Paragraph 27 of this Motion and enter any other relief this Court deems appropriate.

                                    Respectfully Submitted,
                                    MAURICE A. NERNBERG & ASSOCIATES

Date: <u>September 10th, 2024</u>        By: <u>/s/ *David M. Nernberg*</u>
                                    David M. Nernberg
                                    Pa. I.D. No. 205631

                                    Maurice A. Nernberg & Associates
                                    301 Smithfield Street
                                    Pittsburgh, PA 15222
                                    (412) 232-0334
                                    dmn@nernberg.com

                                    Counsel for Charles A. Knoll, Jr.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | BANKRUPTCY NO. 21-21712-CMB |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| CHARLES A. KNOLL, Jr., | : | |
| | : | |
| Creditor. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER OF COURT**

AND NOW, this __ day of _____, 2024 on Creditors Response and Motion, it is Ordered, Adjudged and Decreed that Debtor, Eustace Uku provide the following to Creditor Charles Knoll on or before September 20, 2024:

(1) A copy of the current legal malpractice insurance policy Uku informed the Pa. Disciplinary Board he has;

(2) Federal and state tax returns since filing in this Court in 2021;

(3) Original books and records disclosing income and expenses (client names may be redacted) in his legal business and any other business in which he engages from 2021 to present;

(4) Form 1099s issued to Uku and the record of 1099s issued by Uku from 2021 to present;

(5) Evidence of the source of the funds utilized to pay the Bankruptcy Plan from 2021 to the present; and,

(6) Any other source of income Uku alleges and documents evidencing such income from 2021 through the present.

BY THE COURT:

_____
Honorable Carlota M. Böhm
United States Bankruptcy Judge