1593154M14/dmn/120524/120924/121024/btc/121724/121824/dmn/121824

IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | BANKRUPTCY NO. 21-21712-CMB |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | Chapter 7 |
| Debtor. | : | |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| CHARLES A. KNOLL, Jr., | : | |
| | : | |
| Creditor. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OBJECTION TO DEBTOR'S COUNSEL'S CHAPTER 13 FEE PETITION**

**AND NOW,** Creditor, Charles A. Knoll, Jr. by and through his counsel, David M. Nernberg and Nernberg & Associates, files this Objection to Debtor's Counsel's request for an additional $76,209.63 ($55,973.38 having already been paid) in fees and expenses for a total of $132,183.01 when added to prior payments (to which Mr. Knoll did not object). This is outrageous considering the value of the Estate and, that the normal fees as determined by this Court's general process (No Look Fees) are $5,000.00. This Estate is not complex and, Mr. Calaiaro brought no value to it.

First, it would be premature for this Court to approve Mr. Calaiaro's fees. While it is understood that this filing was required by this Court, Mr. Calaiaro would not be entitled to any funds if and until the secured portion of Mr. Knoll's claim is determined and satisfied from the liquidation of Mr. Uku's assets. As Mr. Knoll's secured claim takes priority over Mr. Calaiaro's fees. Any unsecured creditors (which may in part include Mr. Knoll) should have a right to

1

object once they can evaluate the impact of the requested fees on their potential payouts. This Court must engage in this analysis as well. And, this cannot occur until Mr. Uku litigates his Adversary Action to completion to determine the value of the Farmington Road Property. In addition to Mr. Knoll's Adversary Action related to dischargeability.

It was Mr. Knoll who performed all of the work that gave rise to any value in the Estate, having undone fraudulent transfers of Mr. Uku's and Ms. Shelly Fant's (Uku's ex-wife) properties, which, were/are the only assets in the Estate. Mr. Calaiaro only facilitated the transfer of a property and, the unreasonable delay of this case without any plan for Mr. Knoll's debt.

Mr. Calaiaro and Mr. Uku waited until the last moment (and upon the Chapter 13 Trustee's Motion to Dismiss) possible to file an Adversary Action to determine the value of Mr. Uku's real property and a Motion to Convert to Chapter 11, then, to Chapter 7. Mr. Calaiaro allowed Mr. Uku to go further into debt, spending funds to contest the Mediator's request for fees and ultimately having to pay additional sums, house payments, new credit card and credit account payments, taxes and utilities (some of which are priority liens against the real property in the Bankrupt Estate). Mr. Calaiaro is not entitled to any further compensation and certainly not an amount that would prejudice the creditors.

## Procedural History:

1. Mr. Uku filed this bankruptcy (Chapter 13 and the current Chapter 7) at this case number on July 29, 2021.

2. Mr. Uku presented a plan to which Mr. Knoll objected. The main objection was that Mr. Uku valued 214 Farmington at $300,000 (well below its actual value) and did not propose any payments to Knoll.

3. After objection, the parties each obtained appraisals of 214 Farmington at the Court's direction. Mr. Uku's appraisal came in at $390,000 in October of 2021 and Mr. Knoll's appraisals came in at $450,000 and $470,000 respectively.

4. Mr. Knoll believes and avers 214 Farmington has and had at the time of filing, a market value of approximately $600,000.[1]

5. Subsequently, in August of 2023 Mr. Uku filed an amended plan. However, Mr. Uku did not account the value (either by his own or Knoll's appraisals) and did not propose nor did he make any plan payments to Mr. Knoll.[2]

6. Mr. Knoll continued to object to the plan.

7. After the final meeting regarding Mr. Uku's plan, the Trustee motioned the Court to convert the case to a Chapter 7 or dismiss the case because of Mr. Uku's inability and unwillingness to propose any plan that could satisfy Chapter 13 requirements at any time.

8. On August 2, 2024 Mr. Uku filed a Motion to Convert his case to a Chapter 11, sell 214 Farmington and filed an Adversarial Complaint to value 214 Farmington with the intention of cramming down Mr. Knoll's lien.

9. This Court ordered an evidentiary hearing scheduled for September 10, 2024 and continued to October 24, 2024. (Continued for the purpose of accommodating an in-person appearance by Mr. Uku and Mr. Knoll).

10. Mr. Knoll requested that Uku produce certain documents and evidence of his income, specifically from his law practice and other employment as well as proof of where funds

---

[1] Mr. Knoll contends that the conversion to Chapter 7 was made in bad faith and, that Farmington Road should be valued as of the date of conversion.
[2] Knoll did receive funds against his lien from Uku's sale of his ex-wife's home. However, the home was only part of the bankrupt estate due to Knoll's unraveling Uku's scheme to avoid the liens through filing an action pursuant to the Pennsylvania Fraudulent Transfer's Act.

came from that were utilized to pay the plan. The reason was explained in the Motion, explaining that Mr. Uku received money to pay his bills but concealed its source, thus indicating he had undisclosed assets or income.

11. Mr. Uku objected and was overruled on several occasions by this Court which ordered that the documents were necessary and directly related to whether Uku was acting in good faith.

12. To date, Mr. Uku has not produced many of these documents. It is believed that Mr. Uku is concealing assets, and, laundering money in order to support his lifestyle and bankruptcy plan. Mr. Uku has not provided any excuse for continuing to avoid the production.

13. Nevertheless, this Court ordered the evidentiary hearing would take place, whether or not Mr. Uku and/or Mr. Knoll appeared personally.

14. The day prior to the evidentiary hearing, after Mr. Knoll had made several filings and prepared for the same, over 4 years after filing this bankruptcy, Mr. Uku filed a notice of Conversion to Chapter 7.

15. A 341 Creditors' meeting was scheduled for December 9, 2024 wherein Mr. Knoll intended to question Mr. Uku with regard to his income, new debts incurred on credit without the Trustee's approval and documentation. However, Mr. Uku failed to appear and, did not notify Mr. Knoll that he would not appear.

16. This Court can observe that there are multiple charges for legal fees for similar hearings and procedures wherein Mr. Uku did not appear and has caused undue delay of these proceedings.

**Mr. Calairo Is Not Entitled to His Claimed Fees:**

17. In the action giving rise to Mr. Knoll's judgment, Mr. Knoll litigated extensively to execute on his judgment against Mr. Uku.

18. As part of that litigation, Mr. Knoll was successful in undoing several fraudulent transfers by Mr. Uku and Ms. Fant.

19. Mr. Knoll's efforts and expenditures are the only reason there was or is any property of the Bankruptcy Estate. This includes both the Farmington Road property and Ms. Fant's property that was sold.

20. Mr. Calaiaro has been paid $55,973.38 to date which was and is sufficient for all services rendered.

21. Outside of the one sale, Mr. Calaiaro's efforts to sell other property ended up incurring more fees than the transaction was worth. Specifically, the Chaske Street property sale.

22. Mr. Uku's plan and amended plan made no payments to Knoll, though, Mr. Calaiaro and Mr. Uku obtained an appraisal that would require payments to Mr. Knoll (though Mr. Knoll does not agree with the value). Mr. Uku and Mr. Calaiaro also acknowledge in their Motion to Convert to a Chapter 11 and Adversary Action, that there is equity in the Farmington Property belonging to Mr. Knoll.

23. In fact, plan payments only eschewed to Mr. Calaiaro, the Trustee and the mortgage and debt service for the Farmington Road property.

24. In all, only $89,000 ($100,000 was paid but funds were refunded) was paid pursuant to the plan over its entire lifetime and none of it inured to Mr. Knoll.

25. Mr. Uku should have been making plan payments to Mr. Knoll from the outset, or, at least since he obtained the appraisal in October of 2021.

26. Mr. Uku sought to retain the Farmington Road Property in the Chapter 13 plan, but, but acknowledged he could not, with the only purpose being delay and never to pay creditors.

27. Mr. Uku's plan was so insufficient that the Chapter 13 Trustee moved to dismiss or convert the bankruptcy in June of 2024. And, specifically alleged that the retention of the Farmington Property was never feasible and, never fair to creditors.

28. It was only when threatened with this action, and Mr. Knoll's request to dismiss, that Mr. Uku and Mr. Calaiaro sought conversion to a Chapter 11. Which Mr. Knoll opposed.

29. Furthermore, when faced with the requirement to produce documents related to his income and funds, he opted to convert in an attempt to avoid production.

30. Mr. Calaiaro alleged to this Court that funds from Mr. Uku's legal business were in part utilized to pay for the plan. However, Mr. Uku's 1019 report pursuant to the conversion notes that "The Debtor did not operate a business during the Chapter 13 case."

31. At the same time the informal income statement filed by Mr. Uku alleges income of over $67,000 from his law practice (in 2023 and 2024). See Exhibit G at docket number 294 at this case number filed by Mr. Uku on September 20, 2024 as required by this Court.

32. Mr. Uku's refusal to produce documents and his incompatible statements regarding his legal practice and income therefrom should raise major red flags with this Court and, that Mr. Calaiaro is seemingly knowledgeable of this.

33. Mr. Uku and Mr. Calaiaro also acknowledge that Mr. Uku obtained credit cards without Trustee approval and has incurred additional debt of over $23,000.

34. All of the foregoing occurred under Mr. Calaiaro's watch and direction.

35. Mr. Calaiaro has been over compensated for the only value brought to the Estate, the sale of Ms. Fant's property (which was only possible due to Mr. Knoll's efforts in the underlying case).

36. Now, Mr. Calaiaro seeks an additional $85,425.23 where Mr. Uku has only paid $89,000 to a plan that never contemplated the largest secured creditor, Mr. Knoll. And, did not contemplate any other secured creditors.

37. This is a relatively small Estate and, the time and labor required should have been minimal. The only issue was Mr. Knoll's Adversary Action, which, is again, not complex.

38. This Court has acknowledged that a normal Chapter 13 case would incur fees of $5,000.00 (See No Look fees).

39. This not a novel or difficult Estate. There is essentially one property to administer. Over 4 years and $150,000.00 in fees is outlandish.

40. Given the delays and Mr. Calaiaro's admission that he was no longer going to take cases to trial, he was not precluded from other employment by virtue of his work here and, delay was the only object.

41. There were no exigent time limitations imposed by Mr. Uku and, this Court has granted leave after leave to accommodate both Mr. Uku and Mr. Calaiaro.

42. This administration of this Estate has been anything but efficient.

43. Mr. Calaiaro's claims are grossly disproportionate to the benefit he has provided Debtor and the Estate given that it was Mr. Knoll's efforts that provided any property to the Estate.

44. Finally, this Court should not consider any fees due Mr. Calaiaro until the foregoing actions are complete as Mr. Knoll's secured claim will take priority over Mr.

7

Calaiaro's fees and, the unsecured creditors (which may include Mr. Knoll in part) cannot evaluate the deduction in their claims until that time.

                                                            Respectfully Submitted,
                                                            MAURICE A. NERNBERG & ASSOCIATES

Date: December 18, 2024                      By: /s/ *David M. Nernberg*
                                                           David M. Nernberg
                                                           Pa. I.D. No. 205631

                                                           Maurice A. Nernberg & Associates
                                                           301 Smithfield Street
                                                           Pittsburgh, PA 15222
                                                           (412) 232-0334
                                                           dmn@nernberg.com
                                                           *Counsel for Charles A. Knoll, Jr.*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | BANKRUPTCY NO. 21-21712-CMB |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| EUSTACE O. UKU, | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| CHARLES A. KNOLL, Jr., | : | |
| | : | |
| Creditor. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER OF COURT

**AND NOW,** to-wit, this ___ day of _____, 20__, upon Request of the Creditor, Charles A. Knoll, Jr., it is **ORDERED** that: the fee petition be denied and this Bankruptcy Case is dismissed with prejudice.

By the Court:

_____
Honorable Carlota M. Böhm
United States Bankruptcy Judge